UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff-Respondent,<br><br>　　v.<br><br>MATTHEW CAMPBELL,<br><br>　　　　　Defendant-Appellant. | No. 1:24-cr-00229 JLT<br><br>ORDER AFFIRMING THE JUDGMENT OF THE MAGISTRATE JUDGE<br><br>(Doc. 30) |

  Matthew Campbell plead guilty to assaulting a law enforcement officer in Yosemite National Park in violation of 18 U.S.C. §113(a)(5). At the sentencing hearing, the Magistrate Judge considered many pieces of information, including a statement from one of the victims, in which the officer reported that that she understood that Mr. Campbell knew where the rangers lived and the hours they worked. (Doc. 35 at 6-7) The victim reported that for months after the assault, she "found herself '"looking over my shoulder and double checking the locks on my doors.'" *Id*.

  The Magistrate Judge sentenced Mr. Campbell to 30 days in custody, to complete an anger management course to and complete 25 months of probation afterward. One condition of supervision was that Mr. Campbell, an apparent resident of Arkansas[1], was not to return to

---

[1] Mr. Campbell's driver's license was issued by the State of Arkansas, though he had worked in Florida and Yellowstone National park before he was found in Yosemite. (Doc. 1 at 4; Doc. 24 at 3)

1

Yosemite National Park during supervision except to attend court hearings. It is from this condition that Mr. Campbell appeals.

**I.  Background**

On February 10, 2024, law enforcement officers in Yosemite National Park, were called to employee housing where the caller reported that a man—later determined to be Mr. Campbell—was beating his girlfriend. (Doc. 1 at 3) When the officers arrived, they heard Mr. Campbell's raised voice through the door of his girlfriend's dorm room. *Id.* They announced themselves, and Mr. Campbell responded, "Fuck off." *Id*. Even still, Mr. Campbell opened the door rapidly and loudly asked, "what do you want?" *Id.*

The officers asked him to exit the dorm room and placed him in handcuffs behind his back, while he was positioned on his knees, with his feet crossed behind him. (Doc. 1 at 4) When Mr. Campbell refused orders to stop trying to get up, he responded, "you stop, you don't tell me shit." *Id*. The officers then attempted to walk him outside, but Mr. Campbell planted his feet and resisted. *Id*. The officers attempted to place him in the back of the patrol car and told him, "you gotta go sit in the car." *Id* at 5. He said "no,' and said, "I've fought myself out of so many situations." *Id*. In trying to get him in the car, Mr. Campbell kicked one officer (T.H.) twice in the chest, forcing the officer back five feet and knocking his body camera to the ground. *Id*. The officers then took Mr. Campbell to the ground and held him there until a fourth officer could arrive. *Id.* During this time, Mr. Campbell continued struggling. *Id*.

Once the officers got Mr. Campbell into the car, one officer (B.V.) attempted to move Campbell's legs into the car. (Doc. 1 at 5) Campbell then kicked the officer in the hand and knee and used his foot to push her back against the patrol car. *Id*. As a result, this officer suffered pain in her hand, knee and back, which limited her from exercising for a week. *Id*. The officer was also forced to seek treatment for her knee and back pain. *Id*,

Mr. Campbell entered into a plea agreement in which he agreed to plead guilty to one count of assault on a government official. (Doc. 23) As the factual basis for his plea, he agreed that:

> On or about February 10, 2024, in Yosemite National Park, MATTHEW J.

> CAMPBELL did assault U.S. Park Ranger T.H. Specifically on that date, Rangers responded to a report of a domestic violence incident involving Defendant and his girlfriend. When Rangers responded, CAMPBELL yelled obscenities at the Rangers and refused to obey Ranger's commands. After Rangers detained CAMPBELL and placed him into handcuffs, he resisted the Rangers efforts to place him into a law enforcement vehicle and kicked Ranger T.H. twice, once in the right arm and once in the center of his chest.

(Doc. 23 at 2)

At the time of sentencing, the Magistrate Judge considered the affidavit submitted in support of the criminal complaint, heard the statement of the B.V., in which she reported that she had heard from another officer that Campbell "seemed to know where the rangers lived and that they worked long hours," which resulted in B.V. for months "looking over my shoulder and double checking the locks on my doors." (Doc. 35 at 6-7)

Despite the factual basis for his plea and the elements of the offense to which he plead guilty demonstrating purposeful conduct, at the sentencing hearing, Mr. Campbell told the Court that he never intended to hurt anyone and "that his foot moved and made contact with a Park ranger, and that he was afraid the Park rangers while lifting him were going to drop and injure him." (Doc. 35 at 7) He expressed shame and sorrow. *Id*. The Court then sentenced Mr. Campbell to 30 days in jail, ordered him to complete anger management counseling and placed him on probation for 25 months. (Doc. 26 at 2, 3) Rather than ordering formal supervision, the Court ordered annual review hearings during the term of probation. *Id*. at 3. One term of probation banned Mr. Campbell from returning to Yosemite National Park during the term of supervision. *Id*. The Court noted that the ban was justified because the assaultive conduct occurred at the Park and involved Park rangers. *Id*. at 8.

**II.     Analysis**

The Court may impose conditions of probation that further the goals of sentencing as set forth in 18 U.S.C. § 3553(a)(1) and (2). 18 U.S.C. § 3563(b). Mr. Campbell argues that the condition prohibiting him from entering Yosemite National Park during the term of his supervision violates the Constitution. (Doc. 35 at 9-10) He asserts that geographic restrictions are constitutional only if the probation officer is granted the discretion to allow the defendant to enter the prohibited area. *Id*. The government argues that the court adequately expressed its reasoning

3

1  for the ban, and that Mr. Campbell neither lives nor works in Yosemite, such that the ban merely
2  prevents him from entering Yosemite for recreation.  (Doc. 39). In response, Mr. Campbell argues
3  that because he was found at his girlfriend's dorm room and because he had been working in
4  Yellowstone National Park, that this means he was a semi-resident of Yosemite National Park.
5  (Doc. 40 at 4)

6  First, Mr. Campbell's assertion that because he had worked in Yellowstone supports that
7  he was a semi-resident of Yosemite, is not explained, and the Court can make no sense of how
8  working in Montana/Wyoming demonstrates that he lives in Yosemite. Second, the fact that he
9  was found in his girlfriend's dorm room does not explain how this makes Mr. Campbell any sort
10 of resident of the Park. Finally, the fact that his girlfriend lived in Yosemite at the time of these
11 events does not inform the Court as to where Mr. Campbell was living. Indeed, the evidence is
12 that Mr. Campbell had an Arkansas driver's license, which supports the inference that he was not
13 a resident of Yosemite or California.[2]  Thus, the Court agrees with the government that the
14 geographic restriction implicates only Mr. Campbell's interest in recreation.

15 The Court also rejects the argument that the ban was unconstitutional because the
16 probation officer was not given discretion to allow it. As Mr. Campbell admits, his probation was
17 court supervised, and he had no probation officer. Thus, in his case such a delegation would have
18 been nonsensical. Just as any probationer could do—even if they have a probation officer—Mr.
19 Campbell could petition the Court to modify the geographic restriction if circumstances
20 demonstrated that this was warranted. 18 U.S.C. § 3563(c). Likewise, the Court rejects the
21 argument that granting discretion to a probation officer to allow entry into the Park would have
22 provided a lesser impact on his liberty. This argument ignores that it is the Court's authority that
23 the probation officer would be exercising, and in all cases, ultimately, the authority resides in the
24 Court and not in the probation officer.

25 In none of the cases cited by the parties do the courts hold that delegation of the court's

---

[2] California law requires a person establishing residency in this state to apply for a California driver's license within 10 days. There is no evidence that Mr. Campbell had established his residency in this state or applied for a California license. (California Vehicle Code §§ 12500, 12502, 12505(c))

authority is necessary when the court imposes a geographical restriction. For example, in *United States v. Many White Horses*, 964 F.3d 825 (9th Cir. 2020), the Court held, "It is well settled that a district court may impose a geographic or residency restriction when it is properly supported by the record and substantively reasonable." What is substantively reasonable depends upon the circumstances of the case. *See id.* at 829, 830-831. In *Many White Horses,* one reason that the geographic restriction was substantively reasonable was because the probation officer had the authority to permit the visit. The Court held similarly in *United States v. Watson,* 582 F.3d 974 at 984-985. In neither case did the Court hold that this delegation of authority is *required* to constitute substantive reasonableness. Indeed, in *United States v. LaCoste*, 821 F.3d 1187, 1192 (9th Cir. 2016), the Court rejected that delegating authority to a probation officer to allow conduct can "save what is otherwise a plainly overbroad restriction on [the defendant's] liberty."

In this case, Mr. Campbell has not demonstrated any need to visit Yosemite. There is no evidence he has ever lived or worked in the Park or that he has any ongoing relationship with anyone who lives there. On the other hand, Mr. Campbell's assaultive conduct occurred in Yosemite—seemingly due to him becoming angry and assaultive with his girlfriend. The victims in this case work and live in the Park and should not be subjected to the fear that Campbell will return and cause them further harm. Thus, the Court finds that the restriction is supported by the record and is reasonable. Consequently, the Court **ORDERS**:

1. The judgment of the Court sentencing Mr. Newman to both incarceration and probation is **AFFIRMED** and the appeal from the Magistrate Judge's decision (Doc. 30) is **DENIED**.[3]

IT IS SO ORDERED.

Dated:   **December 26, 2024**

UNITED STATES DISTRICT JUDGE

---

[3] For expedience, the Court declines to consider the appellate waiver argument raised by the government. This does not constitute an endorsement of the position that the waiver does not apply to these circumstances.